[905 NYS2d 765]

Midco Nowash LLC, Petitioner, v #1 Travel, Inc., et al., Respondents.

District Court of Nassau County, First District, July 15, 2010

APPEARANCES OF COUNSEL

*Law Office of Jody E. Markman, PLLC*, New York City, for respondents. *Rosenberg, Calica & Birney, LLP*, Garden City, for petitioner.

## OPINION OF THE COURT

SCOTT FAIRGRIEVE, J.

The respondent moves for an order dismissing the holdover petition. The petitioner opposes this motion and the respondent has filed a reply.

The petitioner in this case owns the La Boutique Shopping Center. The respondent, a family-owned business, has been a tenant of this shopping center for 27 years. The parties entered into a written lease agreement dated June 18, 2003, whereby the respondent leased a portion of a commercial premises in Merrick from the petitioner. The 10-year lease was to terminate on March 30, 2013.

In or about October 2008, the petitioner approached the respondent and asked to negotiate a lease amendment that would relocate the respondent's business to a different location in the shopping center. This would allow the petitioner to merge empty units on either side of the respondent's unit, creating a larger, more marketable unit. The proposed lease amendment also included a security deposit increase and a personal guaranty. Due to these circumstances, the respondent declined to accept the lease amendment offer.

In December of 2008, the respondent approached the petitioner regarding the possibility of obtaining either a rent reduction or payment plan for the month of December. Negotiations were commenced, but the petitioner served the respondent with default notices for the months of December of 2008 and January of 2009. On January 5, 2009, the petitioner served a notice of default upon the respondent. The respondent cured the December and January defaults within the allotted time. Respondent failed to make the rent and additional rent payment for February 2009 by the due date of February 1, 2009. On February 9, 2009, the petitioner served the respondent with a notice of termination by overnight courier. The notice stated that the lease was terminated as of February 20, 2009 and demanded the respondent surrender possession of the premises on or before that date. The respondent commenced an action in the Nassau County Supreme Court seeking declaratory relief as to

the validity of the February termination notice, as well as a *Yellowstone* injunction pending such determination. Petitioner cross-moved to dismiss the *Yellowstone* request, and requested its own declaratory judgment. Pending the determination of the aforementioned motions by the Supreme Court, the parties entered into a stipulation agreement dated February 23, 2009 which provided for the petitioner's right to accept rent payment pending such determination. On April 17, 2009, the Supreme Court denied the respondent's request for *Yellowstone* relief and denied the petitioner's request for dismissal of the action and cross declaratory relief. Respondent then made an application for a stay from the Appellate Division, Second Department, which was denied on May 11, 2009 (2009 NY Slip Op 72097[U] [2009]). Subsequently, the petitioner commenced this holdover proceeding.

Upon a review of the papers before it, the court finds that the petition must be dismissed and the request for sanctions denied.

The notice of termination dated February 9, 2009 was sent prior to the expiration of the grace period provided for in section 8 of the lease. The petitioner argues that the notice of termination dated February 9, 2009 is valid under section 40.1 of the lease, even though a notice of default was never sent to the respondent prior to the notice of termination. Petitioner argues that since the respondent defaulted on the rent in December of 2008 and January of 2009, that the failure to pay the February rent in a timely manner serves as a third default following two consecutive defaults, and is therefore deemed deliberate. It is petitioner's argument that this deliberate default eliminates the obligation of the petitioner to serve a notice to cure before serving a notice of termination.

The respondent argues that the February rent was in fact paid on February 10, 2009, within the 10-day grace period provided for in section 8 of the lease, and therefore there was in fact no third default since the rent was paid within this period.

Section 40.1 of the lease states in part:

"If Lessee fails to pay any rental or other payment due hereunder, . . . , then, in any one or more of such events, upon lessor serving a written (I) ten (10) day notice for lessee's failure to pay any rental or other payment due or, . . . , which notices shall specify the nature of said default, and if, at the expiration of said ten (10) [day] . . . period, Lessee shall have failed to comply with or remedy such

default then, Lessor may give Lessee a ten (10) day notice of termination of this lease and at the expiration of such ten (10) day period, this lease and the term hereunder shall terminate and come to an end, and Lessee shall quit and surrender the Demised Premises to Lessor as if the term hereunder ended by the expiration of the time fixed herein, but Lessee shall remain liable as hereinafter provided."

Section 40.1 clearly provides that the petitioner must serve the respondent with a written 10-day notice of default within which it is given the right to cure such default. If at that time the default has not been cured, the petitioner may then proceed by serving the respondent with a notice of termination. Section 8 of the lease provides the following definition of a default under the lease: "If Lessee shall fail to pay when due any installment of Minimum Annual Rent or any item of Additional Rent or other charges set forth herein, and if such payment *shall continue for ten (10) days after the due date* thereof" (emphasis added).

Section 8 of the lease clearly states that the respondent has a 10-day grace period in which it may pay the rent without penalty, after which point, its failure to pay shall be deemed a default. Since the February rent was in fact paid by February 10, 2009, within the respondent's allotted grace period, there was in fact no default for the month of February.

The petitioner argues that there was in fact a default for the month of February, and that under section 40.1 of the lease, since this was the respondent's third default following two consecutive defaults, it was not required to serve the respondent with a notice of default prior to a notice of termination.

Section 40.1 of the lease further states in part:

"Notwithstanding the foregoing, if Lessee shall default (I) in the timely payment of any item of Minimum Annual Rent or Additional Rent, and any such default shall continue or be repeated for two consecutive months or for a total of four months in any period of twelve months, . . . then, notwithstanding that such defaults shall have each been cured within the period after notice as above provided, any further similar default shall be deemed to be deliberate and Lessor thereafter may serve the said written ten days' notice of termination without affording to lessee an opportunity to cure such further default."

While section 40.1 of the lease does state that after the third default following two consecutive defaults the petitioner is not required to serve the respondent with a 10-day notice of default prior to a notice of termination, it does not in fact state that the petitioner may ignore the 10-day grace period granted to the respondent under section 8 of the lease. Had the February rent remained unpaid at the end of the 10-day grace period, the petitioner had no further obligation to issue a 10-day notice of default prior to a notice of termination. However, the notice of termination sent to the respondent by the petitioner was dated February 9, 2009, a full day prior to the end of the 10-day grace period. It is therefore an impossibility that the notice of termination in question could be valid when created and served upon the respondent before the ripening of the 10-day grace period.

The petitioner and the respondent in this case appear to be unresolved on the meaning of the terms, particularly the "default," in section 40.1 of the lease. The petitioner argues that they were not required to serve any further notice of default, and could terminate the tenancy immediately following the "default" of the respondent in paying February rent. The respondent argues that since the 10-day grace period allowed for in the lease had not passed at the time the notice of termination was served, they could not have been in default, and that the notice of termination was therefore improper. It is well settled that in cases of ambiguity in lease interpretations, the ambiguity must be determined to be in favor of the tenant and against the landlord, so as not to allow for abrupt termination of valuable commercial leases. (*Solow Bldg. Co., LLC v Frelau LLC*, 27 Misc 3d 32 [2010].)

2 Finkelstein and Ferrara, Landlord and Tenant Practice in New York § 15:8, at 15-23 (West's NY Prac Series, vol G) provides that a holdover proceeding may be instituted against a tenant that holds over after a lease is properly terminated by the landlord:

> "N.Y. Real Property Actions and Proceedings Law § 711(1) permits the commencement of a holdover proceeding on the ground that '[t]he tenant continues in possession of any portion of the premises after the expiration of his term without the permission of the landlord . . .' By this statute, a holdover proceeding may be instituted against a tenant, or other party, whose occupancy entitlements have lapsed or were properly terminated by the landlord

and when there has been a failure to vacate the premises.''

Here, there can be no holdover proceeding because the respondent's lease was never properly terminated by the petitioner. Since the respondent's 10-day grace period had not yet lapsed, the petitioner had no legal right to serve the respondent with a notice of termination, and therefore termination could not have been proper.

It is well settled that in a commercial lease matter a landlord may exercise a contractual right to terminate a lease upon the nonpayment of rent provided this option is clearly and unambiguously set forth in the lease. See 1 Finkelstein and Ferrara, Landlord and Tenant Practice in New York § 10:120, at 10-64 (West's NY Prac Series, vol F, 2009), wherein it is stated that

"[w]hen a lease is prematurely terminated due to a rent or other lease-related default, this is known as 'exercising the conditional limitation.' A conditional limitation calls for the premature termination of a lease upon the occurrence or nonoccurrence of a certain event. To exercise the conditional limitation, the landlord must have expressly reserved this right in the parties' agreement.''

In this case, the petitioner did clearly expressly reserve the right to terminate the leasehold interest of the respondent, but only after the respondent defaulted on the payment of rent a third time following two consecutive defaults. Since the respondent in this case did not in fact default on the payment of the February rent, the conditions of termination set forth in section 40.1 of the lease were not met.

The petitioner has failed to prove its claim for sanctions against the respondent.

Accordingly, the respondent's motion is granted and the petition is dismissed. In light of the dismissal the court need not reach the merits of the respondent's other contentions.